UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

SHANDICE GREEN, as Parent and     *
Natural Guardian of JOSEPH WESLEY    *
LYNN, a minor, and CYNTHIA L. HURD, *
as Temporary Administratrix and Applicant *
for Letters of Administration of the Estate of *
JOSEPH LYNN, deceased,         *
                                 *
         Plaintiffs,           *
                                   *
        v.                  *      CIVIL ACTION NO. CV201-52
                                   *
GLYNN COUNTY, GEORGIA, GLYNN    *
COUNTY SHERIFF'S DEPARTMENT,     *
SHERIFF WAYNE BENNETT, in his      *
official capacity as Glynn County Sheriff,   *
JOHN DOE "1", JOHN DOE "2", JOHN    *
DOE "3", JOHN DOE "4", JOHN DOE "5", *
RON CORBETT, in his official capacity as   *
GLYNN COUNTY JAIL ADMINIS-      *
TRATOR, JOHN DOE "6", and JOHN    *
DOE "7",                      *
                                   *
        Defendants.          *

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Glynn County, Georgia, the Glynn County Sheriff's Department, Sheriff

Wayne Bennett, and Ron Corbett, defendants in the above-styled case, and move this Court for

summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, on all

claims brought by the plaintiffs. In support thereof, these defendants show that there is no genuine

issue as to any material fact, and that they are entitled to judgment as a matter of law. This motion

is based upon the record in this case and is made for the reasons set forth in the accompanying brief.

1

This the 16th day of April, 2002.

WHELCHEL, BROWN, READDICK & BUMGARTNER

Terry L. Readdick
Georgia Bar No. 597200

P. O. Box 220
Brunswick, GA  31521-0220
(912) 264-8544

W. GARY MOORE
Georgia Bar No. 521050

ATTORNEYS FOR DEFENDANTS GLYNN COUNTY, GEORGIA, THE GLYNN COUNTY SHERIFF'S DEPARTMENT, SHERIFF WAYNE BENNETT, AND RON CORBETT

P. O. Box 1394
Brunswick, GA 31521-1394
(912) 554-7470

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing pleading by addressing same to:

> Austin E. Catts, Esquire
> Todd C. Brooks, Esquire
> 1529-1/2 Reynolds Street
> Brunswick, GA 31520

and depositing same in the United States Mail with sufficient postage affixed to assure delivery.

This the 16th day of April, 2002.

_____
TERRY L. READDICK

WHELCHEL, BROWN, READDICK & BUMGARTNER
Post Office Box 220
Brunswick, GA 31521-0220
(912) 264-8544

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| SHANDICE GREEN, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. CV201-52 |
| | * | |
| GLYNN COUNTY, GEORGIA, *et al.*, | * | |
| | * | |
| Defendants. | * | |

DEFENDANTS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

**Introduction**

This case arises out of the death of Inmate Joseph Lynn, while in the custody of the Glynn

County Sheriff's Office.  Plaintiff Shandice Green is the mother and natural guardian of Joseph

Wesley Lynn, the sole heir of the deceased, and brings a claim for wrongful death on his behalf.  The

plaintiff Cynthia L. Hurd is the Administratrix of the Estate of Joseph Lynn, and makes a claim for

personal injury and other claims of the Estate.

The defendants are Glynn County, Georgia, the "Glynn County Sheriff's Department,"

Sheriff Wayne Bennett, in his official capacity as Glynn County Sheriff, and Ron Corbett, in his

official capacity as Glynn County Jail Administrator.  The plaintiffs' allege claims against seven

John Doe defendants, but the plaintiffs have not moved to substitute animate defendants for any of

the John Doe defendants.

1

On the morning of April 2, 1999, the plaintiff's decedent, Joseph Lynn, was arrested by the Glynn County Sheriff's Office. While being held in the Booking Area, Inmate Lynn complained of having the "DTs" and seizures. Based upon Inmate Lynn's complaints and other information, personnel in the Medical Department were notified, and Lynn was examined by Nurse Cathy Dixon and Corporal Rose Roberts, the Medical Liaison Officer. Lynn was held in the Booking Area for approximately four hours, for observation. (Aff. of Corbett, Ex. A, ¶ 4, Tabs 1, 3).

Sheriff Wayne Bennett has set forth written procedures concerning the handling of inmates, including procedures for dealing with both emergency and non-emergency medical situations. (Aff. of Bennett, Ex. B, ¶¶ 3, 4, 5, Tabs 1, 2, 3). Detention Officers and Shift Supervisors are required to have various levels of basic first aid and first responder training, but, when circumstances permit, inmate medical problems are addressed by the Medical Department. (Depo. of Corbett, at 105). The Sheriff's Office has contracted with a private physician, Dr. Jeffery Gunderson, to act as Medical Director, and to establish protocols for emergency and non-emergency medical services. Dr. Gunderson is an independent contractor, who is paid a contract payment in exchange for his agreement to provide medical services. Dr. Gunderson's contract does not require him to be at the Detention Center at all times, and the Sheriff's Office also has medical services contracts with a Family Nurse Practitioner, and a Licensed Practical Nurse. At the time of this incident, Judy Edgy was the Family Nurse Practitioner, and Cathy Dixon was the Licensed Practical Nurse. They likewise are not Sheriff's Office employees, but rather, their duties are governed by the contractual arrangements made with them. (Aff. of Bennett, Ex. B, ¶¶ 6, 7, 8, Tabs 4, 5, 6).

The Sheriff's Office has a Medical Liaison Officer, Corporal Rose Roberts, who is an employee of the Sheriff. As her title implies, Ms. Roberts acts a Liaison between the Sheriff's Office

and the Contract Medical Personnel, and she assists by responding to medical emergencies, maintaining medical information for inmates, and for providing security in the Medical Department. (Aff. of Bennett, Ex. B, ¶ 9).

Inmate Joseph Lynn was booked into the Glynn County Detention Center shortly after 8:00 a.m. At that time, it was noted that he claimed to be having "DTs" and seizures. (Aff. of Corbett, Ex. A, ¶ 3, Tab 1). The Medical Department was contacted, and Mr. Lynn was seen by Nurse Dixon and Corporal Roberts. Later that morning, Mr. Lynn stated that he felt as though he were going to have a seizure, and after being advised to sit down, he began to shake and move over the floor uncontrollably, according to the observations of a detention officer. Mr. Lynn was checked by Nurse Dixon and Corporal Roberts, and his vital signs were stable. (Aff. of Corbett, Ex. A, ¶ 4, Tab 2). He was placed in a holding cell for observation, and he then informed at least three people, Officer Dawayne Heidt, Nurse Kathy Dixon, and Officer Karen Scriven, that he had faked his complaints of seizures so he could get his lunch early and be moved out of Booking and into the general population. (Aff. of Corbett, Ex. A, ¶ 4, Tabs 2, 3, 5).

Shortly after noon, Mr. Lynn was checked again by Corporal Roberts, who then informed Nurse Judy Edgy of his condition, and of the fact that he had stated that he had been faking his seizures. Mr. Lynn was then released by the Medical Department to the general population. (Aff. of Corbett, Ex. A, ¶ 4, Tabs 3, 4, 6; Depo. of Corbett, at 74).

Sometime after 1:00 p.m., Mr. Lynn was seen by the Detention Officers concerning the need to place him in a bottom bunk, because of recent hip surgery. (Aff. of Corbett, Ex. A, ¶ 3, Tab 1). During the afternoon, Lynn was housed in a Pod unit with approximately thirty-two inmates, supervised by two Detention Officers. The Detention Officers are visible to the inmates through a

3

large plexiglass window, which can be approached by them. In addition, during the afternoon and evening, the Detention Officers were in the cell unit where Mr. Lynn was housed on at least eighteen occasions, for purposes of security checks, responding to inmate requests, and adding or removing inmates from the Pod. (Depo. of Corbett, at 80-82, 50-51, 86-88; Aff. of Corbett, Ex. A, ¶ 5, Tab 14). During the afternoon and evening, there were no complaints made by Inmate Lynn or anyone else regarding his medical condition, until approximately 10:37 p.m., when lockdown was announced. (Aff. of Corbett, Ex. A, ¶ 8). Shortly after D'Chandra Hall called for the inmates to start locking down, at 10:37 p.m., another inmate ran to the Detention Officers' Station and told Officer Hall that his roommate was lying on the floor and not breathing. Ms. Hall went to the cell and observed Mr. Lynn on the floor. She then radioed to Sergeant James Jones and Corporal Sheila Carroll, and the officers called for Emergency Medical Services and began CPR on Mr. Lynn. At approximately 10:55 p.m., the EMS personnel arrived and took over emergency treatment of Mr. Lynn. He was transported to the Southeast Georgia Regional Medical Center, and he died shortly thereafter, as a result of a pulmonary embolus and possible myocardial infarction. (Aff. of Corbett, Ex. A, ¶ 4, Tabs 7, 8, 9, 10, 11, 12; Depo. of Corbett, at 94; Aff. of Teresa Shorb, Ex. C, ¶ 4; Ex. D).

The plaintiffs brought this suit under 42 U.S.C. § 1983, alleging violations of the Fourth, Eighth and Fourteenth Amendments. Although the plaintiffs' complaint is not entirely clear, they appear also to assert unspecified state law claims. (Pls.' Complaint, ¶¶ 1, 27). The plaintiffs allege that Mr. Lynn had been incarcerated on previous occasions, and that he was a known alcoholic. In addition, the plaintiffs contend that Mr. Lynn experienced life-threatening tremors and seizures in the presence of Sheriff's Office officers, and that some Detention Officers were warned by another detainee that he was ill. The plaintiffs allege that the defendants did not attempt to obtain medical

assistance, and that they were deliberately indifferent to a life-threatening condition, in a number of ways.

In this motion for summary judgment, Sheriff Bennett and Jail Administrator Corbett contend that they function as State officials in the operation of the Glynn County Detention Center, and that they are entitled to Eleventh Amendment immunity from the plaintiff's federal claims. Glynn County, Georgia contends that it makes no policies with respect to the operation of the Glynn County Detention Center, and that any inmate medical policies made by or through Sheriff Bennett are not attributable to Glynn County in determining Section 1983 liability. All three defendants contend that in any event, neither the County, nor defendants Bennett or Corbett, had or has any policy or custom of inadequate medical treatment of inmates which evidenced a deliberate indifference to the medical problems of inmates and which led to any violation of Inmate Lynn's constitutional rights.[1]

The defendants contend that the "Glynn County Sheriff's Department" is not a legal entity capable of being sued, and that any claim against the "Sheriff's Department" is redundant and constitutes simply a claim against the Sheriff in his official capacity. Defendants contend further that the plaintiffs have no actionable claim for punitive damages, because punitive damages cannot be awarded against Glynn County, or against Sheriff Bennett or Jail Administrator Corbett in their official capacities. Finally, all three defendants contend that they are entitled to sovereign immunity from suit from all of the plaintiff's state law claims.

---

[1]

> The defendants contend that no agent of the Sheriff's Office or Glynn County was deliberately indifferent to any medical problem of Mr. Lynn. However, those issues will be addressed only peripherally in this brief, because these defendants contend that there is no basis for imposing liability against them, regardless of whether a constitutional violation occurred as a result of the conduct of persons who are not parties to this action.

5

## Argument and Citation of Authority

I.    SHERIFF BENNETT AND JAIL ADMINISTRATOR CORBETT ARE ENTITLED TO ELEVENTH AMENDMENT IMMUNITY FROM THE PLAINTIFFS' FEDERAL CLAIMS.

In their complaint, the plaintiffs make claims against Sheriff Bennett and his Jail Administrator, Deputy Corbett, in their official capacities. Defendants contend that the Sheriff and Jail Administrator are State officials, and that they may not be sued in their official capacity unless the state has waived its Eleventh Amendment immunity. *Pennhurst State School & Hosp v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). As Glynn County Sheriff, Sheriff Bennett is responsible for the operation of the Glynn County Detention Center and the deputies and officers who work at the Jail. (*O.C.G.A.* § 42-4-1, *et seq.*). As noted previously, Sheriff Bennett promulgates the policies for the handling of inmates in the Glynn County Detention Center, including the policies relating to medical treatment.

With respect to law enforcement within the State of Georgia, the Georgia Constitution provides:

Paragraph II.  Law Enforcement.

The Governor shall take care that the laws are faithfully executed and shall be the conservator of the peace throughout the State. *Art. V, § II, ¶ II of the Constitution of the State of Georgia.*

The Georgia Constitution provides the manner and method of election for all "county officers" (of which the Sheriff is one) within the State of Georgia, the term length for which they serve, and the manner for setting compensation, and it specifically provides that Sheriffs "shall have such qualifications, powers, and duties as provided

6

by general law." *Art. IX, § I, ¶ III of the Constitution of the State of Georgia.*

The Georgia Constitution sets forth the powers possessed by counties, as well as the limitations upon such powers [*Art. IX, § I, ¶ I of the Constitution of the State of Georgia*], and specifically provides:

The power granted to counties. . . shall not be construed to extend to the following matters. . .:

(1) action affecting any elective county office. . . *Art. IX, § II, ¶ I of the Constitution of the State of Georgia.*

The Georgia Constitution also evidences an intent that the State's (and its "departments, agencies, officers or employees) Eleventh Amendment immunity not be waived, regardless of any waiver that may be enacted with respect to State law claims. *Art. I, § II, ¶ IX(f) of the Constitution of the State of Georgia.* The duties of the Sheriff are established by the Georgia General Assembly (*O.C.G.A.* § 15-16-1, *et seq.*), and the Sheriff can only be removed from office by the Governor, or upon certification by a State agency (*O.C.G.A.* §§ 15-6-8(c) and 15-16-26). The operation of jails, and the duties and responsibilities of Sheriffs in connection therewith, in the 159 counties in the State of Georgia, are governed by state law, and not county governing authorities (*O.C.G.A.* § 42-4-1, *et seq.*). The General Assembly further establishes training requirements for jailors of the various counties (*O.C.G.A.* § 35-8-24).

The county governing authorities' only responsibilities with regard to jails are to erect, repair and maintain such jails (*O.C.G.A.* § 36-9-5). Though counties may establish county police departments, such actions have no effect on the powers of the Sheriff. *O.C.G.A.* § 36-8-1; and *Wolfe v. Huff*, 232 Ga. 44 (1974).

7

Recent decisions by the United States Supreme Court, and by the Eleventh Circuit, support the conclusion that county sheriffs in Georgia are appropriately characterized as state officials with regard to their law enforcement duties. *See, McMillan v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734 (1997); *Turquitt v Jefferson County*, 137 F.3d 1285 (11th Cir. 1998). As a result, Georgia sheriffs, in their official capacities, are protected by the Eleventh Amendment from suit. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

Defendants must point out that a recent case of the Eleventh Circuit concluded that binding precedent requires the conclusion that Section 1983 claims against a Georgia county sheriff are not barred by the Eleventh Amendment. *See, Manders v. Lee, et al.*, _____ F.3d _____, 2002 WL 397221 (11th Cir. 2002). In *Manders*, however, the three-judge panel, while determining that it was bound by prior precedent, questioned the correctness of that precedent and concluded that Georgia sheriffs are in fact agents of the State, and not of counties, when performing their law enforcement duties. *Manders, slip op.*, at 12-13.[2] *See also, Fletcher v. Screven County*, 92 F.Supp.2d 1377 (S.D. Ga. 2000), which contains a pertinent analysis of why Georgia Sheriffs are state, rather than county policy makers. Analyzing Georgia law in light of *McMillan and Turquitt, supra*, clearly demonstrates that Sheriff Bennett and Jail Administrator Corbett, in establishing any law enforcement policy, including jail related policies, were establishing state rather than county policy, and they are therefore entitled to Eleventh Amendment immunity from the plaintiffs' claims.

---

[2]

The three-judge panel in *Manders* stated that the result in the case was mandated by prior precedent, but suggested that the issue should be reviewed by the Eleventh Circuit *en banc*. The Sheriff/Defendant in that case filed a petition for rehearing *en banc*, on April 4, 2002.

II.     INMATE MEDICAL POLICIES PROMULGATED BY OR THROUGH SHERIFF
        BENNETT ARE NOT ATTRIBUTABLE TO GLYNN COUNTY IN
        DETERMINING SECTION 1983 LIABILITY.

Obviously, if this Court concludes that defendants Bennett and Corbett are acting as State

officials while carrying out their obligations to operate the Glynn County Detention Center, Glynn

County would be entitled to summary judgment.   In addition, as set forth in the Statement of

Undisputed Material Facts, the Glynn County Commission makes no policies with respect to the

operation of the Glynn County Detention Center, and any inmate medical policies made by or

through Sheriff Bennett are not attributable to Glynn County in determining Section 1983 liability.

Aside from the issue of whether defendants Bennett and Corbett are state officials or county officials,

in order to impose liability upon Glynn County under Section 1983, the plaintiffs would have to

establish:

> A policy. . . that is officially adopted by the municipality, or created by an official of
>
> such rank that he or she could be said to be acting on behalf of the municipality. . .
>
> *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997), *cert. denied*,
>
> 522 U.S. 1075, 118 S.Ct. 852, 139 L.Ed.2d 753 (1998).

As stated by the Eleventh Circuit:

> To establish a policy or custom, it is generally necessary to show a persistent and
>
> wide-spread practice.   Moreover, actual or constructive knowledge of such customs
>
> must be attributed to the governing body of the municipality.   *Depew v. City of St.*
>
> *Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

The evidence in this case establishes that all of the medical policies at issue were made by

or through Sheriff Bennett, without any knowledge or input from Glynn County, and solely pursuant

9

to Sheriff Bennett's authority under state law. Moreover, there is no evidence of any widespread problem at the Glynn County Detention Center concerning medical treatment of inmates, of which any Glynn County officials were aware or had any authority to address. As the Court is aware, a custom must be established by evidence of a "persistent and widespread" practice, and in addition, the plaintiffs would have to establish "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Adickes v S. H. Kress & Co.*, 398 U.S. 144, 167-8, 90 S.Ct. 1598, 1613-14, 26 L.Ed.2d 142 (1970); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). For these reasons, defendant Glynn County, Georgia is entitled to summary judgment on all of the plaintiff's claims.

III.   THERE IS NO EVIDENCE IN THIS CASE OF A POLICY OR CUSTOM OF INADEQUATE MEDICAL TREATMENT OF INMATES WHICH WOULD SUSTAIN LIABILITY UNDER 42 U.S.C. § 1983.

As noted previously, defendants will address only peripherally the issue of whether Inmate Joseph Lynn's constitutional rights were violated, because there are no individual, animate defendants in this case against whom such claims have been made. Pretermitting the issue of deliberate indifference, however, there is no evidence in this case that Glynn County, Georgia, or defendants Bennett or Corbett had any policy or custom of inadequate medical treatment of inmates which evidenced deliberate indifference to medical problems of inmates, and which led to any violation of Inmate Lynn's constitutional rights. To begin with, during the thirteen years that defendant Corbett has been Jail Administrator, the Detention Center experienced only two inmate deaths before Mr. Lynn's death, one by natural causes and one of which was a suicide by hanging. Moreover, there have been no previous claims where an inmate died in custody and it was claimed

10

that the inmate was not provided medical attention. Although there have been some few inmate suits, mostly *pro se*, in which some degree of lack of medical attention is claimed, there is simply no evidence in this case that the Glynn County Detention Center has a problem with ignoring the medical needs of inmates. (Depo. of Corbett, at 55-8; Aff. of Corbett, Ex. A, ¶ 10).

To the contrary, the evidence shows that Sheriff Bennett and Jail Administrator Corbett have established comprehensive written policies concerning inmate medical issues. (Aff. of Bennett, Ex. B, ¶¶ 3, 4, 5, Tabs 1, 2, 3). Moreover, the Sheriff's Office has contracted with a physician and two nurses for the provision of medical care to inmates, which is a completely satisfactory approach to inmate medical care. *Cantrell v. Thurman, et al.*, 231 Ga. App. 510 (1998); *Epps, et al. v. Gwinnett Co , et al* , 231 Ga. App. 664 (1998).

In order to establish liability against Glynn County, or Sheriff Bennett and Jail Administrator Corbett in their official capacities, the plaintiffs essentially must show that the government's policy or custom inflicted the injury. *Monell v. Dept. of Soc. Serv* , 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 114 (1985). To establish deliberate indifference against a municipality, a plaintiff must present some evidence that a municipality knew of a specific, widespread problem and made a deliberate choice not to take any action. *Gold v. City of Miami*, 151 F.3d 1346 (11th Cir. 1998). The plaintiffs in this case cannot establish evidence of any "persistent and widespread" practice, as required by *Adickes v. S. H. Kress & Co.*, 398, U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 1442 (1970); nor can the plaintiffs establish the "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," as required by *Gold , supra,* 151 F.3d at 1350. As required by Sheriff's Office policies, the plaintiff in this case was examined and evaluated several times by contract medical personnel, who concluded that the plaintiff did not need hospitalization or further

11

significant medical treatment.[3]

There is likewise no evidence in this case of any policy of inadequate training or supervision. To the contrary, all Detention Officers receive basic first aid and other ongoing medical training, and supervisors generally receive a higher level of medical training, which may include an additional forty hours of first responder training. (Dep. Of Corbett, at 106-8, 130-1). The plaintiffs can not establish a policy of inadequate training simply by showing that some higher level of training might have resulted in a diagnosis of the plaintiff's condition. Rather, deliberate indifference is established only when the need for additional training is "so obvious," that the violation of rights is likely to occur. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The reason for the *Harris* standard is obvious, and if a lesser standard were the law, any plaintiff could create a factual issue simply by providing an "expert" medical affidavit that a person with some still higher level of training could have possibly predicted any medical event. *See Gold, supra*, 151 F.3d, at 1350 n.10, *and Anderson v. City of Glenwood*, 893 F.Supp. 1086, 1088 (S.D. Ga. 1995).

Since no policy or custom of these defendants was constitutionally inadequate, none of the

---

3

The plaintiffs will likely argue that as-yet unnamed Detention Officers did not take the plaintiff's pulse and blood pressure every four hours, as suggested by Nurse Edgy. As noted previously, Jail Administrator Corbett acknowledges that there is no documentation that this was done. This issue, however, is irrelevant to this motion for two reasons. First, the claims against defendants Bennett and Corbett are official capacity claims only, and accordingly, liability against them can be imposed only on the basis of an impermissible constitutional policy. Second, the evidence establishes multiple ways in which Detention Center officials could have been contacted if Inmate Lynn had any problems throughout the evening, and multiple occasions when Detention Officers were circulating through the cell area where Inmate Lynn was housed. There is thus no evidence that throughout the day Inmate Lynn had a serious medical condition, which was both perceived and ignored by Detention Center officials. *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000).

12

claims against these defendants is sustainable under Section 1983. *See also*, *Williams v. City of Albany*, 936 F.2d 1256 (11th Cir. 1991); *Byrd v Clark*, 783 F.2d 1002 (11th Cir. 1986); *Gainor v. Douglas Co* , 59 F.Supp.2d 1259 (N.D. Ga. 1998).

## IV.   THE "GLYNN COUNTY SHERIFF'S DEPARTMENT" IS NOT A LEGAL ENTITY CAPABLE OF BEING SUED.

It is well established, and this Court has previously held, that a Sheriff's Department or Police Department is not a legal entity which can be sued apart from the county or municipality. In this case, the plaintiffs have sued both Glynn County, Georgia, and Sheriff Wayne Bennett, in his official capacity. Thus, any claims against the "Glynn County Sheriff's Department" are, at best, redundant, and this named defendant should be dismissed. *Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992).

## V.   THE PLAINTIFFS CANNOT RECOVER PUNITIVE DAMAGES AGAINST EITHER OF THESE DEFENDANTS.

In the prayers of their complaint, the plaintiffs seek punitive damages, against unspecified defendants, for unspecified claims. Any claims for punitive damages against Glynn County, Georgia, Sheriff Bennett, or Jail Administrator Corbett should be dismissed. Under federal law, punitive damages are not permitted in Section 1983 claims against municipalities. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Nor are punitive damages claims permitted against municipal officials, in their official capacities. *Alexander v. Fulton Co., Ga.*, 207 F.3d 1303 (11th

13

Cir. 2000). With respect to any state law claims of the plaintiffs, punitive damages are not permitted against municipalities under Georgia law. *Martin v. Hospital Auth. Of Clarke County*, 264 Ga. 626 (1994). In Georgia, suits against public officials in their official capacities are in reality suits against the State, and therefore, public employees in their official capacities enjoy the same sovereign immunity as the state. *Cameron v Lang*, 274 Ga. 122 (2001); *Gilbert v. Richardson*, 264 Ga. 744 (1994); *Seay v. Cleveland*, 270 Ga. 64 (1998).

For the foregoing reasons, these defendants are entitled to summary judgment on any punitive damage claims made by the plaintiffs, under federal or state law.

VI.   **GLYNN   COUNTY,   GEORGIA,   SHERIFF   BENNETT   AND   JAIL ADMINISTRATOR  CORBETT,  IN  THEIR  OFFICIAL  CAPACITIES,  ARE ENTITLED  TO  SOVEREIGN  IMMUNITY  FROM  SUIT  FOR  ALL  OF  THE PLAINTIFFS' STATE LAW CLAIMS.**

In 1991, Art. I, § II, ¶ IX of the Georgia Constitution was amended to provide that sovereign immunity extends to the State and all of its departments and agencies, and that such immunity can only be waived by an act of the General Assembly which specifically provides that sovereign immunity is waived, and the extent of such waiver. Although the Georgia General Assembly has provided a waiver for sovereign immunity applicable to the State in the Georgia Tort Claims Act, that Act specifically excludes counties from the definition of "state." *See, O.C.G.A.* § 50-21-22 and *Woodard v. Laurens Co.*, 265 Ga. 404 (1995). Further, though there are state statutes providing sovereign immunity waivers for municipalities by the purchase of general liability insurance, *e g.*, *O.C.G.A.* § 36-33-1, there has been no such specific waiver provided for counties. In fact, the only legislative intent is to the contrary. *See, O.C.G A* § 36-1-4.

14

As noted in the previous section, suits against public employees in Georgia in their official capacities are in reality suits against the State, and therefore, such public employees are entitled to sovereign immunity. *Cameron v Lang*, 274 Ga. 122 (2001); *Gilbert v. Richardson*, 264 Ga. 744 (1994). In addition, Georgia Courts have specifically concluded that sovereign immunity protects sheriffs sued in their official capacities from state law claims. *Seay v. Cleveland*, 270 Ga. 64 (1998).

To the extent that the plaintiffs have made state law claims against Glynn County, Georgia, or Sheriff Bennett in his official capacity, or Jail Administrator Corbett in his official capacity, all such claims are barred by sovereign immunity and should be dismissed.

## CONCLUSION

In operating the Glynn County Detention Center, Sheriff Bennett and Jail Administrator Corbett act as state officials, and they are entitled to Eleventh Amendment immunity from the plaintiffs' federal claims. Glynn County, Georgia makes no policies with respect to the operation of the Glynn County Detention Center, and any policies made by or through Sheriff Bennett are not attributable to Glynn County in determining Section 1983 liability.

Aside from immunity defenses, neither of these defendants had any constitutionally impermissible policy or custom which evidences their deliberate indifference to medical problems of inmates, and which led to any violation of Inmate Joseph Lynn's constitutional rights.

Finally, Glynn County, and Sheriff Bennett and Jail Administrator Corbett, in their official capacities, are entitled to sovereign immunity from suit from all of the plaintiffs' state law claims.

For all of the foregoing reasons, defendants contend that they are entitled to summary judgment on all of the plaintiffs' claims.

15

This the 16th day of April, 2002.

WHELCHEL, BROWN, READDICK & BUMGARTNER

Terry L. Readdick
Georgia Bar No. 597200

P. O. Box 220
Brunswick, GA  31521-0220
(912) 264-8544

W. GARY MOORE
Georgia Bar No. 521050

ATTORNEYS FOR DEFENDANTS GLYNN COUNTY,
GEORGIA, THE GLYNN COUNTY SHERIFF'S
DEPARTMENT, SHERIFF WAYNE BENNETT, AND
RON CORBETT

P. O. Box 1394
Brunswick, GA 31521-1394
(912) 554-7470

16

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing pleading by addressing same to:

> Austin E. Catts, Esquire
> Todd C. Brooks, Esquire
> 1529-1/2 Reynolds Street
> Brunswick, GA 31520

and depositing same in the United States Mail with sufficient postage affixed to assure delivery.

This the 16th day of April, 2002.

_____
TERRY L. READDICK

WHELCHEL, BROWN, READDICK & BUMGARTNER
Post Office Box 220
Brunswick, GA  31521-0220
(912) 264-8544

17