# United States District Court
## for the Southern District of Georgia
### Brunswick Division

FILED
U.S. DIST. COURT
BRUNSWICK DIV.

2006 JAN 19 P 2: 46

CLERK _____
S_____ GA.

SHANDACE GREEN, as Parent    :
and Natural Guardian of
JOSEPH WESLEY LYNN, a minor,   :
and CYNTHIA L. HURD, as
Temporary Administratix and    :
Applicant for Letters of
Administration of the Estate   :
of JOSEPH LYNN, deceased,

                   :

     Plaintiffs,

                   :

       v.

                   :

GLYNN COUNTY, GEORGIA,
JOHN DOE "4", JOHN DOE "5",    :
and JOHN DOE "7",

                   :

     Defendants.

CIVIL ACTION

NO. CV201-52

### O R D E R

     Plaintiffs, Shandace Green, as parent and natural guardian

of Joseph Wesley Lynn, a minor, and Cynthia L. Hurd, as

temporary administratix and applicant for Letters of

Administration of the Estate of Joseph Lynn, deceased, brought

this civil rights action pursuant to 42 U.S.C. § 1983, alleging

that Defendants are responsible for the death of Plaintiffs'

AO 72A
(Rev. 8/82)

decedent, Joseph Lynn, because they failed to provide emergency medical care to decedent, and failed to train and supervise employees with regard to said care, while he was incarcerated at the Glynn County Detention Center.   Presently before the Court is the motion of Defendant, Glynn County, for summary judgment or, in the alternative, motion for partial reconsideration of a previous ruling.[1]  Having carefully read and considered the parties' positions, the Court finds no reason to depart from its earlier decision.   Therefore, Glynn County's motion will be **DENIED**.

## FACTS

On April 2, 1999, Joseph Lynn was arrested by the Glynn County Sheriff's Department for a violation of his probation. After being arrested, Lynn was transported to the Glynn County Detention Center and processed by Glynn County Sheriff's Department personnel.   During the booking process, Sheriff's Department personnel were made aware that Lynn suffered from delirium tremens ("DTs"), seizures, and other symptoms of alcohol withdrawal.

---

[1]   By Order dated June 11, 2002, the Court denied Glynn County's motion for summary judgment.   (Doc. No. 41.)

AO 72A
(Rev. 8/82)

Based upon Lynn's symptoms and complaints, a licensed practical nurse and a medical liaison officer were contacted. Following examination, Lynn was placed in an observation cell. Sometime thereafter, in an effort to be moved into the general population, Lynn allegedly claimed that he had faked the seizures.   At approximately 1:00 P.M., Lynn was released into the general population at the direction of the medical liaison officer.   At approximately 10:45 P.M., Lynn was discovered unconscious in his cell.   Resuscitation efforts by paramedics were unsuccessful, and Lynn was pronounced dead.

Plaintiffs filed suit pursuant to 42 U.S.C. § 1983 and state law for the alleged constitutional deprivations and wrongful death of Lynn.   In its June 11, 2002, order, the Court granted summary judgment to Sheriff Wayne Bennett in his official capacity, finding such suit the "functional equivalent" as the suit against Glynn County.   On April 3, 2003, the Court granted Glynn County's motion to stay the case pending the outcome of two Eleventh Circuit cases, Grech v. Clayton County, Ga., 335 F.3d 1326 (11th Cir. 2003) and Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003) (en banc), cert. denied, 540 U.S. 1107, 124 S. Ct. 1061, 157 L.Ed.2d 892 (2004).   On May 6, 2005, the Court granted Plaintiffs' motion to lift the stay

and on June 16, 2005, the Court denied Glynn County's motion to dismiss for lack of prosecution.   Glynn County further requested the Court grant its motion because continued pursuit of the instant claims would be futile in light of the Eleventh Circuit Court of Appeals decisions in Grech and Manders.   The Court denied the request, and advised Glynn County that a summary judgment motion was the proper vehicle for asserting that argument.   Thus, the sole issue before the Court is whether, in light of the Eleventh Circuit Court of appeals decisions in Grech and Manders, Glynn County can be held liable for Sheriff Bennett's policies when providing medical care to pretrial detainees and training to jail personnel in regard to such care.

## DISCUSSION

I.   **Summary Judgment Standard**

Summary judgment is appropriate when no genuine issues remain and the movant is entitled to summary judgment as a matter of law.   Fed. R. Civ. P. 56(c).   In so doing, all facts and reasonable inferences are to be construed in favor of the non-moving party.   See Cohen v. United Am. Bank of Cent. Fla., 83 F.3d 1347, 1349 (11th Cir. 1996); United States v. Diebold,

4

Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962); Sweat v. Miller Brewing Co., 708 F.2d 655, 656 (11th Cir. 1983). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990). A factual dispute may be created even when opposing party's inferences are less probable than those inferences in favor of the movant, as long as they may reasonably be drawn from the facts. WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988).

## II.  **Status of Sheriff**

Glynn County argues that under the Eleventh Circuit Court of Appeals decisions in Grech and Manders, as well as their progeny, Sheriff Bennett is a state official with regard to providing medical care to pretrial detainees and, therefore, the county is not liable for his unconstitutional policies, practices or customs. Thus, the proper place to begin the Court's analysis is with these decisions.

5

In _Grech_ and _Manders_, the Eleventh Circuit addressed the status of a sheriff in two contexts:  municipal liability and Eleventh Amendment immunity.  In both of these cases the court, under different analytical approaches, held that a Georgia sheriff was acting as a state official while performing the functions at issue.

The court in _Grech_ addressed the question of whether a Georgia sheriff was a county policymaker for purposes of a county's liability under § 1983 when entering and validating warrants on a statewide database and training and supervising employees in that regard.  Relying heavily on the United States Supreme Court's decision in _McMillian v. Monroe County_, 520 U.S. 781, 117 S. Ct. 1734, 138 L.Ed.2d 1 (1997), and its own decision in _Turquitt v. Jefferson County_, 137 F.3d 1285 (11th Cir.), _cert. denied_, 525 U.S. 874, 119 S. Ct. 174, 142 L.Ed.2d 142 (1998), the court considered which entity, the county or state, had control over the sheriff and the particular area or function at issue.  _See Grech_, 335 F.3d at 1331-32.  The plurality concluded that a county sheriff in Georgia, as a constitutionally protected office independent from the county, is not a county policymaker, but rather a state official, when performing law enforcement functions, particularly when

6

entering and validating warrants on a statewide database and training and supervising employees in that regard.

On the heels of <u>Grech</u>, the Eleventh Circuit was again confronted with the issue of the status of Georgia sheriffs. In <u>Manders v. Lee</u>, the court addressed the question of whether a Georgia sheriff functions as an "arm of the state" and, therefore, entitled to Eleventh Amendment immunity, when establishing the force policy at the jail and in training and disciplining deputies with respect to the policy. Rather than control, the court in <u>Manders</u> focused on the "particular function in which the defendant was engaged when taking the actions out of which liability [wa]s asserted to arise." <u>Manders</u>, 338 F.3d at 1308. The court noted that, while the question was admittedly one of federal law, state law would necessarily inform the answer to the federal question. <u>Id.</u> at 1309.

After a review of the governmental structure of the sheriff's office under Georgia law, the court applied this circuit's four factor test for determining whether an entity is an "arm of the State" in carrying out a particular

AO 72A
(Rev. 8/82)

function.[2]   Finding that the first three factors — state treatment of the entity, state control, and funding of the particular function at issue — weighed in favor of immunity, and that, "at a minimum," the fourth factor, liability for adverse judgment, did not defeat the sheriff's immunity claim, the court held that a Georgia sheriff functions as an "arm of the state" when establishing the force policy at the jail.

In applying each of these factors, the court distinguished the function at issue in <u>Manders</u>, the creation and implementation of the force policy in the jail, from the responsibility to provide medical care to inmates.   When considering the first factor, how state law defines the entity, the <u>Manders</u> court noted that "[t]his case is not a case of feeding, clothing, or providing medical care to inmates, which necessarily occurs within the jail." <u>Id.</u>, 338 F.3d at 1319. Similarly, when considering the second factor, the county's lack of control over the jail force policy, the court found that [w]hile Georgia counties have obligations involving . . . inmates' medical necessities, such duties involve wholly separate and distinct matters from the sheriff's force policy

---

[2]   The four facts are: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity. <u>Manders v. Lee</u>, 338 F.3d at 1309 (citations omitted).

at the jail and training and disciplining of deputies in that regard.  Id. at 1322.  Finally, when considering the third factor relied on in finding that the sheriff was an arm of the state with regard to his force policy, where the entity derives its funds, the court noted that the plaintiff did not allege the sheriff denied him necessities, including medical attention, as requires under 42-5-2(a).  Id. at 1323.  In its conclusion, the court underscored that its decision addressed only the status of Georgia sheriffs with respect to the particular functions involved in that case: use of force policy at the jail and training and disciplining of deputies in that regard.  Glynn County contends that the relevant inquiry is control and urges the Court to extend the holdings in Grech and Manders to the administering of medical care to pretrial detainees.  Were the court to adopt the position urged by Glynn County, however, a county sheriff would wear a "state hat" when performing virtually all functions.  Such a position is not supported by the Eleventh Circuit decisions.  The Manders court specifically rejected this position in noting that it "need not, and d[id] not, decide today whether Georgia sheriffs wear a 'state hat' for Eleventh Amendment purposes for all of the

9

many specific duties assigned directly by the State." Id. at 1319.

The Eleventh Circuit's en banc decision in Manders and the Supreme Court's related decision in McMillian make clear that the arm of the state determination must be made on a function-by-function basis. Abusaid v. Hillsborough County Bd. of County Com'rs, 405 F.3d 1298, 1304 (11th Cir. 2005) (citing Manders v. Lee, 338 F.3d at 1308-09, and McMillian, 520 U.S. at 785, 117 S. Ct. at 1734). The relevant "function" in the instant case is the duty to provide medical care to pretrial detainees and train jail personnel in that regard. Although the sheriff has a duty to provide an inmate with access to medical aid pursuant to O.C.G.A. § 42-4-4, "O.C.G.A. § 42-5-2(a) imposes the duty and the cost for medical care of inmates in the custody of a county upon the county." Middlebrooks v. Bibb County, 261 Ga. App. 382, 582 S.E.2d 539 (2003) (quoting Howard v. City of Columbus, 239 Ga. App. 399, 410(2)(a), 521 S.E.2d 51 (1999)). Thus, as recognized by the Manders decision, the function in the instant case is distinguishable from the law enforcement functions at issue in Grech and Manders. In light of the county's statutory obligation with regard to providing medical care to inmates in

10

AO 72A
(Rev. 8/82)

the custody of the county, the Court concludes that, unlike the functions in <u>Grech</u> and <u>Manders</u>, Sheriff Bennett was acting on behalf of Glynn County with regard to providing medical care to pretrial detainees and training to jail personnel in regard to such care.

## CONCLUSION

The Court has read and considered the positions of all parties to this action. For the reasons set forth above, Glynn County's motion for summary judgment and motion for partial reconsideration of a previous order (Doc. No. 94) is **DENIED**.

**SO ORDERED**, this _____18th_____ day of January, 2006.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

11